**The below described is SIGNED.**

**Dated: January 30, 2012**

_____
**JOEL T. MARKER**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| In re: <br><br> SCOTT LOGAN GOLLAHER and <br> SHARON WESTERN GOLLAHER, <br><br> Debtors. | Bankruptcy Case No. 10-30065 <br><br> Chapter 7 |

### POST-REMAND FINDINGS

The United States Bankruptcy Appellate Panel of the Tenth Circuit (BAP) remanded this matter to this Court for further findings so that the BAP could conduct a meaningful review of this Court's decision to convert the case to chapter 7. "The rule of mandate requires a lower court to act on the mandate of an appellate court, without variation. The mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. Furthermore, under the mandate rule, a lower court cannot give any other or further relief beyond the scope of the mandate. Nor may the lower court review the mandate, even for apparent error."[1] The following constitutes the Court's additional findings under Rule 52(a) to clarify the basis for its decision.

---

[1] 5 AM. JUR. 2D APPELLATE REVIEW § 740 (November 2011).

This case was filed on July 27, 2010 under chapter 11 as a self-identified single asset real estate case, which was reconfirmed by Debtors' counsel at a preliminary stay relief hearing on September 8, 2010 although the Debtors' Schedules and Statement of Financial Affairs filed on August 10, 2010 listed three parcels of real property – the Debtors' residence and two commercial properties known colloquially as "Trackside" and "Trackside II" – as well as various receivables, causes of action, and items of personal property.  At the evidentiary hearing held on November 1, 2010, Mr. Gollaher testified to the non-payment of rent by various tenants of both commercial properties as well as the Debtors' intent, among other actions, to pursue the Rail Management Group for its non-payment of rent as a "very critical" part of the Debtors' plan to repay both secured and unsecured creditors.  Mr. Gollaher also testified to the formal and financial connections between the Debtors, the commercial properties they owned, and certain related entities that were apparently operating or leasing space in the properties.

At the conclusion of the evidentiary hearing, the Court granted stay relief in favor of E&C Fox Investments, LLC (E&C Fox) against Trackside II; however, the Court conditioned the relief such that no foreclosure sale could occur before January 10, 2011 to give the Debtors their requested time to refinance or otherwise satisfy the E&C Fox loans.  The Court suggested that pursuing the Rail Management Group for its alleged unpaid rent "might be a good idea."  The Court also expressed its concerns about the apparently inaccurate and/or incomplete information contained in the Debtors' August and September monthly operating reports that had been received as Exhibits G and H, as follows:  "With respect to the Rail Management Group lease, going through the monthly financial reports which were received as Exhibits G and H – that's the August and September 2010 monthly financial reports, respectively – the Gollahers have received no rent for any of the leases in August and September.  Although, and this is of concern

2

to me, it indicates either a lack of understanding by [sic] the Gollahers' part of their obligations in this case or something else, I don't know what else. But obviously they own the property, that's the testimony. There are other entities that they have that were disclosed in the Schedules that are apparently collecting rent and paying obligations – receipts and disbursements that did not show up on their monthly operating reports, which is of concern to me and should be of concern as well to the U.S. Trustee's office. And that needs to be rectified, Mr. Smith [Debtors' counsel at the time], no matter what happens to this case."[2]

After Debtors' counsel withdrew from representing the Debtors and the January 10, 2011 foreclosure sale deadline passed, the Court issued an Order to Show Cause on January 12, 2011 requiring the Debtors to show cause at a hearing on January 25, 2011 "why the chapter 11 case should not be converted or dismissed." The Order was served on all parties on the matrix in the case, no parties in interest filed a written response to the Order, and only the Debtors and the U.S. Trustee appeared at the hearing. Although the Court did not formally take evidence at that hearing in the form of exhibits or live testimony, it did consider the statements of Mr. Gollaher in response to the Order. Among other things, he referred to the eviction of the Rail Management Group from Trackside II, alleged improprieties in the E&C Fox foreclosure sale that both he and creditor Vernon Smith were challenging in state court, a separate action against E&C Fox for alleged property damage, and the other real property assets in the case in addition to Trackside II. Throughout this case, Mr. Gollaher has made his view clear that E&C Fox is the Debtors' major (and perhaps only) antagonist.

The Court also considered the statements of the U.S. Trustee, who reiterated the issue of inaccurate and/or incomplete monthly operating reports that the Court first raised at the conclusion of the November 1, 2010 evidentiary hearing. When the Court asked the U.S.

---

[2] Electronic Record of November 1, 2010 Hearing from 11:50:14 a.m. to 11:51:24 a.m.

3

Trustee whether he had "any position on whether the case should be converted or allowed to proceed," the U.S. Trustee stated his belief that "the case should be converted rather than dismissed if those are the two options." If the case were allowed to proceed, the U.S. Trustee requested that the Court impose "rather stringent deadlines on filing and confirming a plan." The Court then entered its Order Pursuant to Order to Show Cause and Establishing Deadlines on February 7, 2011 that contained various deadlines imposed by the Court and a provision that the case would be converted to chapter 7 without further notice or hearing if the Debtors failed to comply. It also required the Debtors to "provide information regarding the operations of their business entities to the United States Trustee."[3]

Finally, at the disclosure statement hearing on March 30, 2011, the U.S. Trustee yet again reiterated the insufficient financial information provided by the Debtors, particularly as to Trackside, and E&C Fox referenced the Debtors' failure to amend the previously filed monthly operating reports. The Court disapproved the disclosure statement as not providing adequate information and then ordered conversion of the case based on the Debtors' failure to obtain approval of a disclosure statement by the required deadline. The Debtors appealed the conversion order, both this Court and the BAP denied a stay pending appeal, and the BAP issued its Opinion and Judgment remanding the matter for further findings on December 13, 2011 with the mandate issuing on December 28, 2011.[4]

---

[3] Although this order was appropriately served only upon the parties who had appeared at the hearing pursuant to Local Rules 9021-1 and 9022-1, in the interest of caution the Court has since required service of similar orders on the full mailing matrix.

[4] After the BAP issued its Opinion and Judgment but before it issued the mandate returning jurisdiction to this Court, several creditors filed a motion to dismiss the bankruptcy case and joinders. The lead motion was set for hearing on January 23, 2012 at 2:30 p.m. but was procedurally improper due to defective service under Federal Rule of Bankruptcy Procedure 2002(a)(4) because the motion and notice of hearing were not served on all creditors. The motion and joinders also substantively conflate this Court's duty on remand to clarify the basis for its decision to convert the case at the hearing on March 30, 2011 with certain creditors' requests to dismiss the case now. Given the procedural and substantive issues with the

As the BAP noted, the statutory bases for the Court's Order to Show Cause and subsequent conversion of the case were § 105(a) and § 1112(b) of the Bankruptcy Code. The BAP also noted a number of factors considered by the courts when deciding whether conversion or dismissal is in the best interests of creditors and the estate in addition to the preferences expressed by creditors.

Based on the evidence formally presented at the November 1, 2010 stay relief hearing, the filings of record on the Court's docket, and the statements of the parties considered at the January 25, 2011 and March 30, 2011 hearings, the Court determined that conversion rather than dismissal of the case was in the best interests of creditors and the estate for a number of reasons:

(1) Although the Debtors had always self-identified the nature of their business as single asset real estate and stay relief had been granted against Trackside II, the Debtors' Schedules and Statement of Financial Affairs as well as Mr. Gollaher's testimony and statements indicated that there were potential assets in the form of other real properties, causes of action, receivables, and personal property that might be liquidated for the benefit of creditors.

(2) The Debtors' persistent failure to provide complete and accurate financial information demanded that an independent fiduciary investigate the Debtors' financial affairs and pursue appropriate actions for the benefit of creditors.

(3) Given the antagonism between the Debtors and E&C Fox, including the challenge by the Debtors and Vernon Smith to E&C Fox's conduct of the Trackside II foreclosure sale (which was E&C Fox's second attempt at foreclosure of Trackside II since the petition date), the Court

---

motion and joinders, the Court treated the hearing on the motion to dismiss as a status conference. And since no further notice or hearing is required for this Court to clarify the basis for its decision in March 2011 on the existing record at the time, the Court indicated at the status conference that it would issue these post-remand findings without further evidence or argument.

5

was concerned that dismissal of the case might lead to the loss of E&C Fox's rights under the stay relief order if the Debtors refiled for bankruptcy.

(4) Despite the fact that notice of the Court's Order to Show Cause went to all creditors in the case, no creditors expressed a preference for dismissal at any time on or before March 30, 2011. The only statements by creditors were Vernon Smith's support for the Debtors' proposed disclosure statement and plan and E&C Fox and Aurora Bank's opposition to them at the March 30, 2011 hearing. And the U.S. Trustee had expressed his preference for conversion over dismissal unless the case were allowed to proceed on a short leash, which the Court permitted before it converted the case.

--------------------------------------------END OF DOCUMENT--------------------------------------------

**\_\_\_\_\_ooo0ooo\_\_\_\_\_**
**SERVICE LIST**

Service of the foregoing **POST-REMAND FINDINGS** will be effected through the Bankruptcy Noticing Center to each party on the official mailing matrix.

